could sit intermittently no more than 2 hours in an 8-hour workday; he could stand intermittently no more than 1 hour in an 8-hour workday; he could never walk, climb, twist/bend/stoop, or operate heavy machinery; he could only occasionally reach above shoulder level; he had no ability to lift/carry items; and he could never engage in pushing or pulling. Tr. 263.  Dr. Miric did not indicate when these limitation commenced and merely noted that he expected them to last for 6 months. Id.

On March 17, 2008, Richardson had an appointment with Dr. Miric. Tr. 232-233.  The report of this appointment is unrevealing as to Richardson's work-related functional abilities.  Richardson continued to have tenderness at the L4-5 and L5-S1 level of the paravertebral musculature; he had facet joint tenderness; he had hypomobility and tenderness of the right sacroiliac joint; and he had limited flexion of the spine.  Tr. 232.  The report by Dr. Miric set forth no diagnosis. Id.  On May 12 and June 11, 2008, Richardson again had appointments with Dr. Miric. Tr. 230-231.  The report of the May 12th appointment is very similar to Dr. Miric's report of the March 17th appointment.  Dr. Miric did note, however, that Richardson had "increased tone in the lumbar spinal region." Id.  The report of the June 11th appointment is also similar but in addition reveals that a repeat MRI showed lumbar spinal stenosis. Tr. 230.

On September 15, 2008, Richardson had an appointment with Martha Boulos, M.D., a neurologist, in East Stroudsburg. Tr. 228-229. Richardson complained of pain across the lower back and numbness from the waist down when walking. Id. Richardson also "report[ed] a new problem with numbness of the left arm on and off in the C8-T1 type of distribution." Id. The results of a physical examination were essentially normal, including Richardson "did not seem to have any [sensory] pinprick deficit in the upper extremity." Id. Richardson's motor strength was normal (5/5) bilaterally; his reflexes were essentially normal; his gait was steady; he was able to walk on heels and toes[38] and perform tandem walking; he had a negative Romberg sign; and finger-to-nose testing was intact bilaterally. Id. Richardson weighed 370 pounds and he was advised to lose weight. Id.

Richardson was seen by Dr. Boulos on December 15, 2008, after having an MRI of the thoracic and cervical spine. Tr. 226-227. The MRI of the thoracic spine revealed "possibly an old trauma at the level of T5" and the MRI of the cervical spine revealed "multilevel disc bulge and herniation at the C2-3, C3-4,

---

38. The toe walk test requires the patient to walk on his toes. The inability to do so suggests L5-S1 nerve root irritation. Clinical Examination Terminology, MLS Group of Companies, Inc., https://www.mls-ime.com/articles/GeneralTopics/Clinical%20Examination%20Terminology.html (Last accessed June 26, 2012).

27

C4-5 and C5-6 with multilevel spinal stenosis that is mild at C2-3, C4-5 and C5-6," and "moderate at C3-4." Tr. 226.  The MRI of the cervical spine also revealed bilateral neuroforaminal narrowing at all levels but "no evidence of [spinal] cord compression." Id.  The results of a physical examination were essentially normal, including Richardson had normal motor strength, deep tendon reflexes and gait. Tr. 227. Richardson was able to tandem walk and the Romberg sign was negative.

On February 16, 2009, Richardson had an appointment with Dr. Boulos at which Richardson complained of continued low back pain mostly at the end of the day. Tr. 225.  The results of a physical examination were essentially normal. Id.  Richardson had normal motor strength, his reflexes were 1+ (considered hypoactive, low normal or diminished reflexes) and symmetric, his gait was steady, and he did "not have significant muscle spasm in the back[.]" Tr. 227.  The Romberg sign was negative. Id.

At an appointment with Dr. Boulos on May 18, 2009, Richardson continued to complain of "upper and lower back pain on and off depending on his level of activity" and "right upper extremity and hand numbness on and off lasting very few minutes." Tr. 223.  It was stated by Dr. Boulos that Richardson was using a

28

CPAP[39] machine to alleviate his sleep apnea and that it was providing him with relief and a "better level of energy[.]" Id. The results of a physical examinations were essentially normal other than "a positive Tinel's sign at the wrist" suggestive of carpal tunnel syndrome. Id. Richardson had normal motor strength and reflexes; his gait was steady; and he was able to tandem, toe and heel walk. Id.  The results of a EMG/Nerve Conduction study on May 20, 2009, were consistent with bilateral carpal tunnel syndrome, right worse than left. Tr. 236.  The examiner advised that there should be a clinical correlation. Id.

In a document entitled "Function Report-Adult" dated January 18, 2008, Richardson stated he lives with his wife and children. Tr. 115-122.  Richardson's family responsibilities include taking care of his 8 year old and 4 year old sons. Tr.115. Specifically, Richardson stated as follows:

> On a daily basis, I supervise my 8 year old son while he gets ready for school.  I help him prepare breakfast and watch him get on the school bus.  I proceed to wake my 4 year old son.  I provide breakfast and soon afterwards, we watch educational programs and/or movies. We have lunch.  We try to nap.  I wait for my 8 [year] old to get home from school.  I assist him with his homework.  I heat up dinner and we eat. Then, I wait for my wife to get home from work . . . I care for my 8 and 4 year old sons with parental guidance.

---

39. "CPAP" is an abbreviation for continuous positive air pressure.

Tr. 115-116. Richardson is able to take care of his own personal needs, including hair care, shaving, and feeding himself. Tr. 116. Although Richardson did state that he has difficulty putting on pants and socks because he has bending limitations and that he cannot stand long in the shower because his legs go numb, he did not state that he needs assistance to dress and bathe. Id. Richardson needs no reminders to take care of personal needs and grooming or to take his medications. Tr. 117. He is able to prepare his own meals. Id. He needs no encouragement to do things other than loading and unloading the laundry machines. Id. Richardson mows the lawn once a week in the summer using a riding lawn mower. Id.

Richardson is able to drive a motor vehicle and use public transportation. Tr. 118. He is able to go out alone. Id. He is able to shop in stores, by mail and by computer. Id. Richardson is able to pay bills, count change, handle a savings account and use a checkbook and money orders. Id. Richardson's hobbies are "playing football" and "watching all kinds of sports on TV." Tr. 119. He stated that he "[e]njoyed playing sports with [his] son" and "[r]iding bikes" and that he "used to be able to do these activities 5-6 days a week." Id. Richardson did not assert that he totally refrains from doing these activities because he wrote: "When I attempt to walk and play sports with my children my

30

legs and waist go numb. I have sharp pains that go across my lower back. On occasion my hands go numb." Id. Richardson spends time with friends once a week watching sporting events on TV. Id. Richardson when given an opportunity to do so noted no problems with reaching, talking, hearing, seeing, his memory, completing tasks, concentrating, understanding, following instructions, and getting along with others. Tr. 120.

**Discussion**

The administrative law judge at step one of the sequential evaluation process found that Richardson has not engaged in substantial gainful work activity since November 23, 2006, the alleged disability onset date. Tr. 12. The administrative law judge stated that the amount of $5416.59 reflected on Richardson's 2007 earning record was vacation and sick pay received from his employer. Id.

At step two of the sequential evaluation process, the administrative law judge found that Richardson had the following severe impairments: "degenerative disc disease and spinal stenosis in his lumbar spine, degenerative disc disease and disc herniations in his thoracic spine, disc herniation and spinal stenosis in his cervical spine and carpal tunnel syndrome." Id. The administrative law judge found that Richardson's sleep apnea was a non-severe

impairment because Richardson "had a good response to CPAP treatment." Id.

At step three of the sequential evaluation process the administrative law judge found that Richardson's impairments did not individually or in combination meet or equal a listed impairment. Tr. 13.

At step four of the sequential evaluation process the administrative law judge found that Richardson had past relevant unskilled to semi-skilled, light work as a milieu counselor, residential aide, food inspector and security guard and he could not perform that work but that he had the residual functional capacity to perform a limited range of sedentary work. Tr. 13-17 and 34-36. Specifically, the administrative law judge found that Richardson could perform sedentary work which allowed Richardson to work in a seated position for 6 or more hours per 8-hour workday and standing for the balance of the workday but also allowed a sit/stand option at will. Tr. 13. The residual functional capacity set by the administrative law judge, inter alia, also prohibited repetitive rotation, flexion and extension of the neck; only allowed occasional grasping and handling of objects, pushing and pulling with the upper extremities, operation of foot controls, stooping, crouching and kneeling; and no ambulating over uneven terrain for long distances. Tr. 13.

32

In concluding that Richardson had the residual functional capacity to engage in this limited range of sedentary work, the administrative law judge relied on the opinion of the state agency medical consultant, Dr. Muthiah. The administrative law judge further found that Richardson's statements concerning his limitations were not credible to the extent that they were inconsistent with the ability to perform this limited range of sedentary work. Tr. 16-17.

At step five, the administrative law judge based on a residual functional capacity of a limited range of sedentary work as described above and the testimony of a vocational expert found that Richardson had the ability to perform work as a surveillance monitor, inspector, and order clerk, and that there were a significant number of such jobs in the regional, state and national economies. Tr. 18.

The administrative record in this case which primarily consists of vocational and medical records is 268 pages in length and we have thoroughly reviewed that record. The administrative law judge did an adequate job of reviewing Richardson's vocational history and medical records in his decision. Tr. 10-19. Furthermore, the brief submitted by the Commissioner sufficiently reviews the medical and vocational evidence in this case. Doc. 10, Defendant's Brief.

Richardson argues that the administrative law judge erred (1) in assigning limited weight to the opinions of Richardson's treating physicians and (2) in discounting Richardson's subjective complaints of pain. We find no merit in Richardson's arguments.

The Social Security regulations require that an applicant for disability insurance come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. § 404.1512(c). Richardson failed to provide such evidence. No treating physician provided a statement indicating that Richardson had functional limitations for the requisite continuous 12 month period[40] that would prevent him from engaging in the limited range of sedentary work set by the administrative law judge. Dr. Miric's functional assessment only covered a 6 month period.

---

40. As stated earlier in this memorandum to receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

The record contains a functional assessment from a state agency medical consultant. The administrative law judge's reliance on that assessment was appropriate. See Chandler v. Commissioner of Soc. Sec., 667 F.3d. 356, 362 (3d Cir. 2011) ("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]"). The administrative law judge appropriately evaluated Richardson's severe and non-severe impairments and took into account Richardson's functional limitations in the residual functional capacity assessment. In fact the administrative law judge gave Richardson the benefit of the doubt and reduced Richardson's residual functional capacity below the level found appropriate by Dr. Muthiah.

As noted above, the administrative law judge stated that Richardson's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ability to perform a limited range of sedentary work. Tr. 16-17. The administrative law judge was not required to accept Richardson's subjective claims regarding his physical limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that

"an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed Richardson when he testified at the hearing on July 8, 2009, the administrative law judge is the one best suited to assess the credibility of Richardson.

A consultative physician reviewed Richardson's medical records. The opinion of that consultant supports the Commissioner's decision.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.